FILED
2012 Nov-14 AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **TERRY MURRY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **7:11-cv-3748-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Terry Murry ("Murry") brings this action pursuant to section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Doc. 1. This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

### I.  Procedural History

Murry filed his application for Title II disability insurance benefits on June

8, 2009, alleging a disability onset date of November 9, 2008, due to swelling and pain in his neck and right shoulder. (R. 122-123, 149). After the SSA denied his application on July 30, 2009, Murry requested a hearing. (R. 109-113, 69-70). At the hearing on March 21, 2011, Murry was 43 years old with a high school education, and his past relevant work included working as a welder, farmhand, truck driver, heavy equipment oil changer, and forklift operator. (R. 78-103, 23, 122, 150). Murry has not engaged in substantial gainful activity since November 9, 2008. (R. 149).

The ALJ denied Murry's claims on March 31, 2011, which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6, 14-28). Murry then filed this action pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Murry met the insured status requirements of the Act through December 31, 2013. (R. 19).  Moving to the first Step, the ALJ found that Murry had not engaged in substantial gainful activity since November 9, 2008, the alleged onset date, and, therefore, Murry met Step One. *Id*.  Next, the ALJ found that Murry satisfied Step Two because he suffered from the severe impairments of "status post cervical fusions times two with mild/moderate bulge and stenosis, status post bilateral SLAP lesion repair, A/C joint resection and subacromial decompression on the right shoulder, status post left shoulder arthroscopic subacromial decompression, and hypertension." *Id*.  The ALJ then proceeded to the next step and found that Murry failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*.  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that:

> [T]he claimant has the residual functional capacity ["RFC"] to

> perform light work…is restricted to no lifting/carrying or reaching overhead on a repetitive basis but is not compromised as to sitting, standing or walking. His pain is only mild to moderate.

(R. 20). In light of Murry's RFC, the ALJ determined that Murry is "unable to perform any past relevant work." (R. 23). The ALJ then proceeded to Step Five where she considered Murry's age, education, work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 24). Because the ALJ answered Step Five in the negative, the ALJ found that Murry "has not been under a disability, as defined in the Social Security Act, from November 9, 2008, through the date of this decision." *Id*.

## V.  Analysis

The court turns now to Murry's contentions that the ALJ failed (1) to develop the record by obtaining a medical source opinion ("MSO") from a medical expert and (2) to generate a physical RFC by a medical doctor. *See* doc. 6, at 6-8. The court addresses each contention in turn.

    A.    <u>Alleged failure to develop the record with MSO by medical expert</u>

While an ALJ "has a basic duty to develop a full and fair record," *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), the ALJ is not obligated to automatically obtain testimony from a medical expert. Rather, the ALJ "*may* ask

for and consider the opinion of a medical . . . expert concerning whether ...[a claimant's] impairment(s) could reasonably be expected to produce [his or her] alleged symptoms." 20 C.F.R. § 404.1529 (emphasis added).  Critically, the ALJ is not required to obtain additional medical opinion when, as here, the record contains sufficient evidence for the ALJ to make a disability determination. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted).

Indeed, here, the ALJ considered the entire medical record to reach a finding that Murry is not disabled.  Specifically, although Murry alleges a disability onset of November 2008, the ALJ reviewed medical evidence dating back to 2006 when Murry had a worker's compensation injury, including treatment notes from Robert Robinson, M.D., William Standeffer, Jr., M.D., Stephen Ikard, M.D., and the Good Samaritan Clinic.  (R. 22-23, 199-205, 239-259, 281-309, 318-320, 349-351, 271-280, 325-341).  As the ALJ pointed out, Dr. Robinson, a neurological surgeon, treated Murry after his work injury and reviewed an MRI which revealed post-fusion changes in Murry's neck and significant degenerative disc disease at C3-C4 with right C4 radiculopathy.  (R. 22, 200, 202).  Dr. Robinson performed an anterior cervical diskectomy and fusion with iliac hip graft and short-statute plating on Murry in January 2007.  (R. 22,

203-204, 258-259). Post-operatively, Dr. Robinson reported that Murry's x-rays "demonstrate a solid fusion at C3-C4" and that the "C4-C5 interspace is normal." (R. 243). Critically, as the ALJ noted, Dr. Robinson released Murry to return to work initially on light duty and then to full duty with no restrictions. (R. 22, 244-45). In his final entry, Dr. Robinson reported that Murry was "doing quite well" and added that Murry had "improved significantly" since undergoing another surgery by Dr. Standeffer to treat bone spurring and a partially torn rotator cuff. (R. 244).

    The ALJ also reviewed the treatment notes from Dr. Standeffer, who performed a SLAP (superior labral tear from anterior to posterior) lesion repair and subacromial decompression with AC joint resection on Murry's right shoulder in May 2007. (R. 22, 285, 288-289). The surgery significantly improved Murry's range of motion and pain, and Dr. Standeffer reported that Murry "is doing well and has no complaints." (R. 288-289).

    The ALJ noted next that Murry visited the Good Samaritan Clinic with complaints of onset of left shoulder pain and continued right shoulder and neck pain in 2010. (R. 22, 326-27). Murry visited the Clinic initially in May 2009 during which the Clinic obtained MRIs of Murry's right shoulder, cervical spine, and thoracic spine. (R. 266-269). The right shoulder MRI demonstrated a

"probable new inferior labral tear," "mild tendinosis," "a new degenerative cyst formation in the superior lateral humeral head," but "[n]o joint effusion is seen." (R. 266). The cervical spine MRI indicated a "fusion plate is present at C3-C4," "bony fusion at C6-C7," but "no acute abnormality demonstrated." (R. 268). The thoracic spine MRI showed a "[n]ormal thoracic spine...[and] [n]o evidence of acute bony traumatic injury." (R. 269). When Murry returned in 2010, he again underwent MRIs of his left shoulder and cervical spine which showed a "partial tear of the posterior fibers of the distal supraspinatus," "mild tendinopathy," and "peri-tendinitis" and "no abnormal internal cord signal. No fracture or subluxation. Mild spondylosis in the mid cervical spine...Minimal annual bulging at C5-6 on the right. No significant neural impingement is seen" in the cervical spine. (R. 332-34).

     Regarding Murry's pain complaints, the ALJ noted that Dr. Ikard, another orthopaedic surgeon, consulted on Murry's case. Dr. Ikard gave Murry a left shoulder injection of Kenalog, Lidocaine, and Marcaine in November 2010, which proved helpful. (R. 23, 302-03, 350-51). When Murry returned to Dr. Ikard in December, he had fairly good range of motion of the left shoulder, good strength, and was neurologically intact. (R. 351). Dr. Ikard injected Murry's shoulder again and advised Murry to continue his exercise program. (R. 351).

> Finally, the ALJ pointed out that Murry's visit with Dr. Ikard was the last treatment note of record. There is no evidence of returned visits to either treating orthopedist or general practitioner for any complaints of pain or other limitations.  Further, there is no indication that any treating physician has prescribed narcotic pain medications.  [Murry] reported Celebrex, which is an anti-inflammatory medication for pain....Overall, the objective medical evidence supports only mild to moderate pain and other limitations.  Recent x-rays of the cervical spine indicated only mild spondylosis and minimal disc bulging/stenosis.  There was no repeated x-rays or MRIs on this shoulders since his surgeries.  However, physical examinations showed some limited range of motion which would not preclude work activity at the modified range of light duty.  Thus, [Murry] is not disabled.

(R. 23).  In other words, there was extensive medical evidence in the record from which the ALJ could make her RFC determination and to find that Murry was not disabled.  Accordingly, the ALJ committed no error by failing to obtain a medical expert's opinion.

      B.    <u>Alleged failure to generate a physical RFC by a medical doctor</u>

Murry contends next that the ALJ erred by failing to obtain a physical RFC from a medical doctor.  Doc. 6 at 8.  Unfortunately for Murry, the ALJ is not obligated to obtain a physical RFC assessment from a physician.  *See generally* SSR 96-8p and 20 C.F.R. § 416.945.  Rather, the responsibility for assessing the RFC falls on the ALJ.  20 C.F.R. § 416.946.  In that regard, in determining whether the claimant is disabled, the ALJ "will always consider the medical

opinions in [the] case record together with the rest of the relevant evidence [he] received." 20 C.F.R. 404.15279(b).  Here, as mentioned, *supra*, the ALJ had sufficient medical evidence in the record from which to develop the RFC. Therefore, it is irrelevant that the ALJ did not obtain a physical RFC assessment from a physician.  Based on the record before this court, the substantial evidence supports the ALJ's RFC determination and conclusion that Murry can perform light work.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Murry is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**Done** the 14th day of November, 2012.

_____
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE